**65 So.2d 794**

**GLORIOSO v. GLORIOSO.**

No. 40938.

April 27, 1953.

Rehearing Denied June 1, 1953.

Joseph Rosenberg, New Orleans, for plaintiff-appellant.

Fred J. Cassibry, New Orleans, for defendant-appellee and plaintiff in reconvention.

McCALEB, Justice.

This is a suit for separation from bed and board by a husband founded on abandonment. The wife admits that she left the matrimonial domicile but avers that she was justified in her action because of cruel treatment by her husband and she reconvened for a separation on that ground. She prevailed in the trial court, the judge granting her a separation from bed and board, with $50 per month alimony, and dismissing the husband's demand. He has appealed.

The record reveals that plaintiff and defendant were married at Amite, Louisiana on December 3, 1947 and, immediately thereafter, established a matrimonial domicile at the home of plaintiff's uncle and aunt in the city of New Orleans. The parties were both quite young and their venture in matrimony was none too promising; plaintiff was not established in life, had no trade or profession from which he could earn a living and was not in a position to provide a home. Indeed, plaintiff's main means of support was an indulgent uncle and aunt, Mr. and Mrs. Joseph Fazzino, who had been caring for him since he was two years old. They operated a small grocery at 2203 Louisiana Avenue and lived in an apartment above it.

When the couple were married, plaintiff had nowhere to take his bride other than to the home of his aunt and uncle, where he lived. There he took her and there they remained as long as they lived together.[1] When they came there, plaintiff's uncle made him a present of his grocery business, turning over the stock and allowing plaintiff to keep all the profits for himself. He thereafter operated the store with the help of defendant.

The parties lived together, occupying a room in the home of the aunt and uncle, until September 29, 1951, when defendant left and returned to the home of her mother. She contends in her reconventional demand, which is substantiated by her testimony, that her act was founded on just cause because life with plaintiff, in his uncle and aunt's home, had become unbearable; that, at the beginning of the marriage, plaintiff had represented to her that they would remain at the Fazzino residence only until other suitable housing accommodations could be obtained; that, notwithstanding this, plaintiff thereafter many times informed her that he had no intention of living anywhere else; that, during the years spent at the Fazzino home, plaintiff and his uncle and aunt continually subjected her to cruel

[1]. No children were born of the marriage. The wife testifies that plaintiff had no desire for them.

treatment and outrages; that they lived in an atmosphere of anger and antagonism; that she was defamed, cursed and struck by her husband on many occasions; that his uncle and aunt addressed her in boisterous tones; that she was charged by them with infidelity and that, on the day before she left the matrimonial domicile, her husband unjustly accused her of the theft of $17.

Plaintiff, his aunt and uncle deny the charges and the testimony of the wife. They say that she had no reason whatever to leave home; that plaintiff was a kind and dutiful husband and that there was never any unpleasantness or misunderstandings during the entire period of the marriage.

Thus, a narrow question of fact is posed. The judge of the district court, having seen the witnesses and heard them testify, was apparently impressed by the testimony of the wife and felt that the denials of wrongdoing by plaintiff and his witnesses were not credible. · A review of the evidence does not disclose error in his conclusion of fact. On the contrary, we find that plaintiff's statement is somewhat evasive and that he and his uncle do not exhibit complete sincerity when testifying about their financial dealings with each other.

■■ Moreover, in seeking a reversal of the judgment of the trial court on questions of fact, plaintiff carried the burden of demonstrating to our satisfaction that the decision is obviously wrong. · But his counsel does not point to any discrepancies in

defendant's evidence nor does he disclose any reason why the judge should not have believed her version and preferred it to the testimony of plaintiff and his witnesses. He simply says that the evidence preponderates for plaintiff because he is corroborated by his uncle and aunt.

■ This argument is of no avail here. It is too well recognized to require citation of authority that it is not the numerical superiority of witnesses that is the controlling factor in evaluating evidence; rather, it is the quality of the witnesses' testimony, taking into consideration their interest in the outcome and their demeanor on the stand.

■ Counsel for the defendant has answered the appeal and requests an award of a $500 attorney's fee, which was not allowed below. It is, of course, settled that, in a suit in which a wife obtains a judgment of divorce or separation from bed and board, her attorney's fee is a community debt. Benedict v. Holmes, 104 La. 528, 29 So. 256; Gosserand v. Monteleone, 159 La. 316, 105 So. 356, 42 A.L.R. 310; Goodwin v. Goodwin, 207 La. 690, 21 So.2d 875 and Parker, Seale & Kelton v. Messina, 214 La. 203, 36 So.2d 724. Accordingly, since the community (if any) was dissolved by the judgment of separation from bed and board, Article 136, LSA–Civil Code, this attorney's fee is payable out of it. However, there was no personal liability on the part of the husband for this debt other than as head and master of the community, which is now dis-

solved. It is evident that the judge in the instant case was of the opinion that there was no community property and, hence, no liability for the attorney's fee.

The judgment is affirmed.