*86 So.2d 80*

**Athen S. TANNER**

**v.**

**Vera Howe TANNER.**

**No. 42020.**

June 30, 1955.

On Rehearing Jan. 16, 1956.

Further Rehearing Denied Feb. 20, 1956.

Blanchard & Blanchard, C. A. Blanchard, F. A. Blanchard, Donaldsonville, for plaintiff-appellant.

Miriam Attaya, Gonzales, for defendant-appellee.

PONDER, Justice.

The plaintiff has appealed from a judgment awarding the defendant $200 attorney's fees for services rendered in a divorce suit.

The plaintiff brought suit against the defendant for divorce under the provisions of LSA–R.S. 9:301 on the ground that he and his wife had lived separate and apart for more than two years. The defendant reconvened and asked for judgment on the same ground and for custody of the children, alimony, and attorney's fees. On hearing of the case, the lower court gave judgment granting the plaintiff a divorce and dissolving the community of acquets and gains existing between him and the defendant. The custody of the children was awarded to the defendant with the right of visitation given to the plaintiff, the defendant's right to claim alimony for herself and support for the children was reserved. The plaintiff was ordered to pay the defendant's attorney's fees in the amount of $200. The plaintiff has appealed only from that part of the judgment which awarded the defendant attorney's fees.

The defendant did not answer the appeal and, therefore, the only question presented is the correctness of that part of the judgment awarding the defendant attorney's fees.

The plaintiff contends that the community was dissolved at the time of the filing of the suit by him and that, therefore, the judgment awarding the attorney's fees was erroneous because the wife was not successful in obtaining a judgment on her reconventional demand. In support of his contention the plaintiff cites: Alpha v. Aucoin, La.App., 167 So. 835; Benedict v. Holmes, 104 La. 528, 29 So. 256; Spiller v. Spiller, 170 La. 813, 129 So. 212; Coco, Broussard & Dupuy v. Byrd, 2 La.App. 613 and Collins v. Collins, 194 La. 446, 193 So. 702. On the other hand, the defendant relies on the holdings in the cases of Martin v. Martin, 191 La. 761, 186 So. 94 and Jones v. Jones, 200 La. 911, 9 So.2d 227.

Article 2432 of the LSA–Civil Code provides: "The judgment which pronounces the separation of property, is retroactive as far back as the day on which the petition for the same was filed." This article of the Civil Code has been consistently applied in suits for separation from bed and board and divorce, and decisions are numerous to that effect. Some of the more recent

decisions holding that this article of the Civil Code is applicable are: Benedict v. Holmes, 104 La. 528, 29 So. 256; Gastauer v. Gastauer, 143 La. 749, 79 So. 326; Alpha v. Aucoin, La.App., 167 So. 835.

Under the provisions of Article 2432 of the LSA–Civil Code, the dissolution of the community reverts back to the time of the filing of the suit by the plaintiff and, therefore, the services of the defendant's attorney were rendered after the dissolution of the community. Such being the case, the attorney's fees is a debt of the wife and not that of the community. August v. Blache, 200 La. 1029, 9 So.2d 402; Gastauer v. Gastauer, supra; Alpha v. Aucoin, supra; and Benedict v. Holmes, supra.

The two cases cited by the defendant, Martin v. Martin, supra, and Jones v. Jones, supra, are not applicable. The attorney's fees were allowed in those cases to the wife who had secured an award for a pension or alimony under the provisions of Article 160 of the LSA–Civil Code. We do not have such a situation in this case as there is no judgment awarding or denying alimony. The wife's rights were merely reserved in the judgment to claim alimony.

For the reasons assigned, the judgment of the lower court is amended so as to disallow the award to the defendant for attorney's fees in the sum of $200 and as thus amended the judgment is affirmed.

MORSE, J., concurs.

HAMITER and SIMON, JJ., dissent.

FOURNET, C. J., absent.

## On Rehearing

HAMITER, Justice.

As is stated in the majority opinion on the original hearing of this cause appellant (the plaintiff husband) is complaining only of the district court's award of attorney's fees to appellee (the defendant wife). Mainly, he insists that inasmuch as he obtained the divorce, and the wife was unsuccessful on her reconventional demand, the community was retroactively dissolved as of the time of the institution of his suit; and, consequently, the awarding of the attorney's fees against him as head and master of the community, for legal services rendered the wife subsequent to the filing of his petition, was improper.

Accordingly, the primary question presented by this appeal is: When an action for a separation or divorce instituted by the husband terminates in a decree in his favor does the obligation to pay attorney's fees for services rendered to the wife in defense of the suit and in connection with her unsuccessful reconventional demand constitute a debt of the community (assuming its previous existence) for which a judgment against the husband, as head and master of the community, may be rendered?

A generally recognized and well-established principle in this state is that ordinarily a litigant is not entitled to recover attorney's fees, even when successful in the suit, except where the obligation therefor is imposed by contract or statute.

See Winkler v. Ascension Bank & Trust Co., 182 La. 69, 161 So. 23; Efner v. Ketteringham, 217 La. 719, 47 So.2d 331; Brantley v. Tugwell, 223 La. 763, 66 So.2d 800, and Griffin v. Bank of Abbeville & Trust Co., 228 La. 857, 84 So.2d 437. The instant case involves no contract on the part of the husband to pay attorney's fees, and we know of no legislative enactment providing for an award of them in a suit for separation from bed and board or divorce.

Of course, attorney's fees have been allowed in many actions of that nature (some of these will be hereafter discussed). But a review of the cases discloses that the decreed liability of the community (or the husband as its head and master) for the attorney's fees incurred by the wife in a separation or divorce suit is a creature of the jurisprudence.

When the matter was first presented to this court in Tucker v. Carlin, 14 La.Ann. 734, liability of the community for such fees was not imposed. In that case the husband and wife had brought divorce actions against each other, and both suits were dismissed. Thereafter, the wife's attorney sued the husband, as head and master of the community, to recover for his services in representing the wife in the two proceedings. The court refused to allow the fees, commenting that the obligation so incurred was a debt of the wife separately. It specifically ruled that the husband could not be held liable either on the basis that the wife had expressly contracted the indebtedness (she had no authority to bind the community) or on the theory of quasi contract.

Subsequently, however, the court in Benedict v. Holmes, 104 La. 528, 29 So. 256, 258, decided that where the wife had successfully prosecuted her suit for a separation from bed and board and for the liquidation of the community the necessary attorney's fees incurred by her were a legal charge against the community. The court's decision was based primarily on the following reasons: " * * * The wife has a recognized legal right to institute against her husband a suit for divorce or separation of property upon grounds that are specified in the law; but, if she cannot charge her attorney's fees and cost against the assets of the community in the event she obtains a decree of separation and dissolution, the right is practically a barren one, if she possesses no separate property. If the husband's course of conduct be such as to justify the dissolution of the marriage and the dissolution of the community on the petition of the wife, it would seem that in such case the cost and attorney's fees incident thereto ought to go against the community assets in the course of its liquidation, or against the husband personally if he takes the same to himself. * * * "

Thus, a conflict existed between the principles enunciated in the Tucker case and those of the Benedict matter. And this conflict was recognized and resolved in

Gosserand v. Monteleone, 159 La. 316, 105 So. 356, 358, 42 A.L.R. 310, the court there electing to follow the theory of the Benedict case, namely, that the wife's right to employ counsel in her suit for a separation or divorce was a barren one, and she was practically without remedy, if her attorney's fees could not be charged against the community. The court said: "The law lays down certain specific causes for which a separation from bed and board or a divorce may be granted by the court, and the law also recognizes the right of a wife to institute and prosecute a suit for that purpose against her husband.

"This right carries with it the right to employ counsel to institute and prosecute such a suit. No good and valid reason is suggested or can be suggested why the attorney thus employed may not recover for his services against the husband as head and master of the community.

"If the attorneys in such a case are not entitled to recover against the husband or the community, then the law giving the right to the wife to sue for a separation or divorce and to employ counsel for that purpose * * * is a dead letter, or is a barren one, as was said in the Benedict case. The wife would find herself vested with a legal right but without practically any remedy or the authority to vindicate such right.

\* \* \* \* \* \*

"After all is said, therefore, we are of the opinion that the fact that a reconciliation took place between the parties, thereby putting an end to the suit for separation and leaving the community intact, did not have the effect of relieving the defendant from liability for the fees of the attorneys employed by his wife."

Later, the same case came again to this court on the question of the quantum of the fee due. 164 La. 397, 113 So. 889, 891. We held that the amount agreed upon by the wife could not be conclusive on the community since she was without authority to contract obligations against it, but that the fee should be allowed and fixed on a quantum meruit basis. In the opinion the following was said: "The debt in this particular case was not contracted by the husband during the marriage, in the sense that it is an obligation arising from covenant; yet it is made an obligation of the husband; or of the community, through operation of law. * * *"

▬ Since that time this court has consistently ruled that attorney's fees incurred by the wife in prosecuting a suit for separation from bed and board or divorce is the obligation of the community, whether she is successful in the proceeding or not. If successful she is entitled to a judgment for her attorney's fees in the same suit which pronounces the separation or divorce. Lester v. Lester, 160 La. 708, 107 So. 499; Balfe v. Balfe, 165 La. 283, 115 So. 489; Shipp v. Shipp, 183 La. 1025, 165 So. 189; New v. New, 186 La. 1017, 173 So. 748; Martin v. Martin, 191 La. 761, 186 So. 94,

and Goodwin v. Goodwin, 207 La. 690, 21 So.2d 875. If she is unsuccessful her attorney can recover the fees from the husband, as head and master of the community, the wife being legally incapable of obtaining a judgment against him during the continued existence of the community. Gosserand v. Monteleone, supra; Daly & Hamlin v. Trascher, 163 La. 660, 112 So. 521; Spiller v. Spiller, 170 La. 813, 129 So. 212; Starns v. Starns, 176 La. 610, 146 So. 165; Tullis v. Calhoun, 184 La. 207, 165 So. 714; Collins v. Collins, 194 La. 446, 193 So. 702, and Parker, Seale & Kelton v. Messina, 214 La. 203, 36 So.2d 724.

The above cited cases, particularly the early ones in which the doctrine was developed (except Tucker v. Carlin), clearly disclose a view on the part of the court that in the public interest the husband, as head and master of the community, should be condemned to pay for the services rendered to the wife in prosecuting a suit for separation from bed and board or divorce, as well as for a settlement of the community, even though there is no specific provision in the statutory law providing for such liability. And while the language used in the opinions has occasionally been rather loose in referring to the claim for her attorney's fees as a "community obligation or debt", generally speaking it carries the definite implication that, in the creation of the obligation, the intention was that such claim be acquitted only out of the assets of the community. In so condemning the husband as head and master of the community, in other words, the court has not considered the obligation as a debt for which the husband's separate property would be liable in the event that the community had no assets. In effect, the holdings have been that the wife, or her attorney, may look to the assets of the community for payment of the attorney's fees, and that if the community did not acquire and own any property there is no liability on the part of the husband separately.

Our stated interpretation of the cited cases is fortified by the decision in Glorioso v. Glorioso, 223 La. 357, 65 So.2d 794, 795, in which the wife, as plaintiff in reconvention, was successful in her demand for a separation from bed and board. In the action she had also sought attorney's fees, and under the jurisprudence discussed above she would have been entitled to an award therefor except for the fact that the community had no assets. In denying the claim the court said: " * * * It is, of course, settled that, in a suit in which a wife obtains a judgment of divorce or separation from bed and board, her attorney's fee *is a community debt.* * * * Accordingly, *since the community (if any) was dissolved by the judgment of separation from bed and board, Article 136, LSA-Civil Code,* this attorney's fee is payable out of it. However, there was no personal liability on the part of the husband for this debt *other than as head and master of the community,* which is now dissolved. It is

evident that the judge in the instant case was of the opinion that *there was no community property and, hence, no liability for the attorney's fee."* (Italics ours.)

All of the above cases involved suits in which the wife appeared either as plaintiff or plaintiff in reconvention. But we can conceive of no good reason why the principles enunciated therein respecting attorney's fees of the wife should not be equally applicable when it becomes necessary for her to employ counsel to defend a suit for separation from bed and board (or divorce) and to protect her rights therein. According to those principles it makes no difference whether the wife, in bringing the suit and obligating the community assets for her attorney's fees, is successful or unsuccessful in prosecuting her demand. Similarly, it should be immaterial (and we hold that it is) whether she is successful or unsuccessful in defending the husband's action, particularly where a dissolution and settlement of the community is involved. She, or her attorney, should be able and is entitled to look to the assets of the community, if any there be, to satisfy a claim for the necessary legal services rendered to her in making the defense.

In reaching this conclusion we are not unmindful of the pronouncement made in Gastauer v. Gastauer, 143 La. 749, 79 So. 326, 328, that, "The judgment in the suit in (for) separation from bed and board retroacted to the date of the filing of that suit (C.C. 2432); hence the costs of that

suit * * * are not chargeable to the community * * *." The court there was purportedly saying, in effect, that the judgment of separation from bed and board retroacted to the date of the filing of the suit in which it was obtained; therefore, the community was dissolved as of such date and, of course, could not be held liable for charges incurred after the dissolution.

Also, we are aware that in subsequent cases in our jurisprudence such pronouncement of the Gastauer case, clearly erroneous as demonstrated hereinafter, was given recognition. Talbert v. Talbert, 199 La. 882, 7 So.2d 173; Uchello v. Uchello, 220 La. 1061, 58 So.2d 385; Dauterive v. Sternfels, La.App., 164 So. 349; Alpha v. Aucoin, La.App., 167 So. 835; Dewenter v. Mott, La.App., 27 So.2d 444. However, although recognized it was not applied and followed in at least two of these, the decisions reached having been contrary thereto. In fact, the results were in keeping with our conclusion herein that the community is dissolved at the time of the rendition of the judgment of separation from bed and board, not as of the date of the filing of suit therefor. Talbert v. Talbert and Uchello v. Uchello, both supra.

Again, the erroneous pronouncement under consideration is not in harmony with observations made and results reached in some other recent cases. Glorioso v. Glorioso, supra; Peters v. Norris, 191 La. 436, 185 So. 461; Eiermann v. Modenbach, 198 La. 1062, 5 So.2d 335; Oliphint v. Oliphint,

219 La. 781, 54 So.2d 18, 20. Particularly noticeable is the following from the Oliphint case: "On the day appointed for the hearing, the defendant appeared and filed his return to the rule. * * * And, attaching to his answer a purported full statement of the community assets and liabilities as of June 8th 1944 *(the time of its dissolution by judgment of separation from bed and board)* * * * he prayed that his return be deemed good and sufficient * * *." (Italics ours.)

Reverting to Gastauer v. Gastauer, supra, the court therein, as appears from the extract quoted above, cited LSA–Civil Code Article 2432 in support of its statement that the "judgment in the suit in (for) separation from bed and board retroacted to the date of the filing of that suit." The article, contained in a chapter of the Civil Code, Book III, Title VI, Chapter 4, entitled "Of the Separation of Property Prayed for by the Wife during Marriage", reads as follows: "The judgment which pronounces *the separation of property,* is retroactive as far back as the day on which the petition for the same was filed." (Italics ours.) Undoubtedly, the court inadvertently erred in citing this article in connection with and as having relevancy to a judgment of separation from bed and board. This is made manifest by the history of the litigation leading up to that decision and by a comparison of such article with other codal provisions.

More than a year previous to the commencement of her action for a separation from bed and board, Mrs. Gastauer (in February, 1910) sued her husband for a *separation of property* pursuant to the authorization contained in LSA–Civil Code Article 2425 et seq. The district court dismissed the suit and she took an appeal. While that appeal was pending she instituted (on April 7, 1911) the suit for separation from bed and board. In it also she was unsuccessful and she prosecuted an appeal. Here a judgment of separation from bed and board was rendered in her favor on April 28, 1913. See 132 La. 941, 61 So. 879.

Meanwhile, on May 20, 1912, this court had reversed the judgment in the first suit and decreed the wife to be *separate in property.* 131 La. 1, 58 So. 1012. Our decree, according to LSA–Civil Code Article 2432, retroactively effected a dissolution of the community as of the date of filing of that separation of property suit (a date, as above shown, long before the action for separation from bed and board was commenced).

Following the rendition of that decree, and while the appeal in the separation from bed and board proceeding was pending here, the wife, in the district court and in the suit brought initially for a *separation of property,* sought an accounting of her paraphernal funds and a partition of the community. In the proceeding, after a hearing on the merits, the court rendered

judgment (in February, 1915) recognizing some of her claims and rejecting others and also determining which of the husband's claims were chargeable against the community. It was on an appeal from such accounting judgment in the separation of property suit that this court (on May 27, 1918) made reference to the retroactivity of the judgment in the suit for separation from bed and board, as of the date of the suit's filing, and ruled that, therefore, the costs of that suit were not chargeable to the community. But in view of the history of the Gastauer litigation as outlined above, and particularly since the wife's decree of separation of property retroacted under the provisions of LSA–Civil Code Article 2432 and dissolved the community long before her action for separation from bed and board was even instituted, it is obvious that the court committed inadvertent error in such pronouncement and that it meant to say and hold: "The judgment in the *suit for separation of property* retroacted to the date of the filing of that suit (Civil Code Article 2432); hence, the costs of the suit for separation from bed and board, all of which were incurred subsequent to the community's dissolution by the separation of property action, are not chargeable to the community." (Italics ours.)

Furthermore, a consideration of LSA–Civil Code Article 2432 along with other codal provisions reveals that it was never intended to have application to a judgment of separation from bed and board. Governing the suit for such a judgment, as well as the effects flowing therefrom, are specific provisions of our LSA–Civil Code contained in Book I, Title V, Chapters 1 to 5, inclusive, some of which are particularly significant in this discussion. Thus, Article 149 authorizes the wife to require an inventory of the property in the possession of the husband and to enjoin his disposing of it; and Article 150 provides that from the day suit is brought the husband cannot incur any debt *on account of the community* nor dispose of the immovables *belonging to the community,* and that any alienation made by him after that time in fraud of the wife's rights is null (note that an alienation is not null unless in *fraud* of her rights). Obviously, these provisions would be unnecessary if the community were dissolved as of the time of filing the suit. Their purpose, undoubtedly, is to provide protection for the wife's interest in the community that continues during pendency of the suit for separation (or a divorce—LSA–Civil Code Article 151) and to modify the rules which would otherwise prevail because of such community's continued existence. Hence, the clear inference to be drawn therefrom is that the community remains intact, subject to the mentioned codal limitations, until terminated by judgment. As stated in Article 155, "Separation from bed and board carries with it separation of goods and effects." Divorce produces the same results. Article 159.

On the other hand Article 2432 is found in a book and chapter of the LSA–Civil Code widely separated from the provisions just discussed. It and its related articles provide rules for an entirely different action, namely, the action for separation of property that is to be instituted only and exclusively by the wife; and the purpose of them is to afford protection to her "whenever her dowry is in danger, owing to the mismanagement of her husband, or otherwise, or when the disorder of his affairs induces her to believe that his estate may not be sufficient to meet her rights and claims", LSA–Civil Code Article 2425, and to provide "for the future by putting an end to the community and thus securing to the wife her individual acquisitions or gains thereafter in whatever manner obtained." Webb v. Bell, 24 La. Ann. 75. Incidentally, such relief may be had by her without a termination of the marriage relationship.

If Article 2432 were applicable to a suit for separation from bed and board then its accompanying rules should likewise be appropriate. Yet the articles themselves clearly demonstrate that they cannot, and were never intended to, be so applied. "The separation of property, although decreed by a court of justice, is null, if it has not been executed by the payment of the rights and claims of the wife, made to appear by an authentic act, as far as the estate of the husband can meet them, * * *." Article 2428. "The separation of property, obtained by the wife, must be published three times in the public newspapers, at farthest within three months after the judgment which ordered the same." Article 2429. " * * * The creditors of the husband may object to the separation of property decreed and even executed with a view to defraud them. They may even become parties to the suit for a separation of property, and be heard against it." Article 2434. Certainly, these rules have never been observed in the obtaining of judgments of separation from bed and board.

Too, Article 2432, pertaining as it states to the separation of property action, could not possibly be applicable: to a husband's suit for separation from bed and board, since only the wife has the right to resort to that action; or to any divorce suit, brought by either the husband or wife, for the chapter in which it is found (unlike the chapters dealing with separation from bed and board) contains nothing making it relevant to divorce proceedings.

Moreover, to consider the primary question presented here from a practical standpoint, if it were correct to say that a judgment for a separation from bed and board is retroactive to the date of the filing of the suit therefor then a wife could never recover her entire attorney's fees even though successful in an action brought by her. In that situation she would be entitled to an award only for the legal services rendered in the preparation and filing of her petition —not for those necessary thereafter in a trial of the cause.

Appellant further contends herein that no award should be "made to the wife for attorney's fees against the husband, when she is defendant, and when the attorney is totally unnecessary and accomplishes nothing that is beneficial to the community or to the wife." This contention addresses itself to the matter of quantum, rather than liability. Unquestionably, in the husband's suit for a separation or divorce the wife is entitled to consult an attorney as to her rights and to have professional representation in the proceedings for the continued protection of her interests. In the instant cause there is ample proof that the legal services rendered appellee were well worth the awarded attorney's fees of $200.

In view of this conclusion and of our holding above that appellant as head and master of the community is liable for the attorney's fees of appellee, and since the record shows that the community existing between these litigants had some assets from which the charge might be acquitted, the decree of the district court will not be disturbed.

For the reasons assigned the judgment of the district court insofar as appealed from is affirmed.

PONDER, Justice (concurring).

At the time I wrote the original opinion in this case I held the same views expressed in the majority opinion on rehearing but at that time I was not disposed to depart from the prior jurisprudence. However since the members of this Court have arrived at the conclusion reached I concur.